**Harry J. COFFMAN, Appellant,**

v.

**COBRA MANUFACTURING COMPANY, Appellee.**

**No. 13672.**

United States Court of Appeals
Ninth Circuit.

Oct. 12, 1954.

For original majority opinion, see 214 F.2d 489.

JAMES M. CARTER, District Judge (dissenting).

We originally concurred in Judge Stephens' opinion holding that under California law, Secs. 717, 719, 720, Code of Civil Procedure, Coffman was entitled to the benefit of a plenary action to determine his claimed set-off against the moneys found due by the Master from Coffman to Aircraft, arising from Coffman's misappropriations.

If Coffman may legally press this claim of set-off, we are still in accord with the decision that Coffman is entitled to a plenary proceeding in which to assert the set-off.

But after the petition for rehearing was filed we again examined the whole case and we are convinced that Coffman should not be permitted anywhere, in summary or plenary proceedings, to pursue his alleged set-off. Since there was ample evidence to support the Master's findings of Coffman's appropriations from Aircraft, and his debt to Aircraft arising therefrom, this was properly determined in the summary proceedings under Sec. 719 C.C.P. and the judgment of the trial court should have been affirmed.

We regret we were unable to convince our colleagues of the validity of this position. It is only because the case, as now decided, (and to which we heretofore gave our approval) represents a grave miscarriage of justice and permits Coffman to profit by his own wrong, that we feel called upon to state our present position on the courts' denial of the petition for rehearing.

The facts as found by the Master and as supported by the evidence, show that since May 7, 1945, Cobra had been a creditor of Aircraft. The indebtedness was based on book account entries from May 7, 1945 to and including April 16, 1946, then aggregating $6,254.25. The referee on May 20, 1947, found $6,254.25 was due Cobra from Aircraft. The decision was affirmed on November 5, 1947, on petition for review to the district court. Judgment in this amount was entered in favor of Cobra against Aircraft on November 5, 1947 in the records of the clerk's office.

In October 1945 Aircraft ceased doing war work and all contracts were cancelled. Thereafter it did nothing but "cleaning up." At the time Aircraft ceased active work it had a net worth of $20,190.51. Coffman was the dominant and controlling stockholder of Aircraft as well as its president, and had been such since January 17, 1945. Since that date and until 1949, he had been the person in charge of the affairs of Aircraft.

Within a matter of days after October 31, 1945, when Aircraft had a net worth of $20,190.51, Coffman began doing business as Nash Wilshire, an auto sales agency. On November 25, 1945, he opened a bank account under the name of Harry J. Coffman, doing business as Nash Wilshire. Having no funds of his own Coffman turned to the assets of Aircraft which he controlled and used these assets to establish himself in the Nash Wilshire venture.

From time to time Coffman drew money from Aircraft's funds. He maintained books, including a ledger with one account listing his indebtedness to Aircraft and a separate account with Aircraft entitled "Nash Wilshire" purportedly showing moneys due him from Aircraft. The first account gradually increased in amounts due Aircraft, reflecting moneys of Aircraft, utilized by Coffman. By May 31, 1947, the month the

referee made his order in favor of Cobra against Aircraft, Coffman owed Aircraft $9,082.36 but the amount allegedy due Coffman on the Nash Wilshire account had been built up to $9,259.42.

By Coffman's own computations, as late as September 30, 1946, he was indebted to Aircraft in the sum of $9669.-94 over and above his claimed offset. Thereafter by his same computation his indebtedness to Aircraft was cut down by the Nash Wilshire offsets until finally on June 30, 1948 his debt to Aircraft was completely extinguished and Aircraft owed him $2966.93.

Thus, the effective period of Coffman's claimed set-off was between September 30, 1946 and June 30, 1948. Cobra had been a creditor since May 7, 1945 and its total claim had fully accrued on April 16, 1946. Thus, Coffman's claimed set-off to his admitted debt to Aircraft all accrued after the debt from Aircraft to Cobra had become due.

The Master found and the evidence shows that Coffman appropriated at least $9240.46 of the property of Aircraft to his own use as shown by his account on the books of Aircraft, which account is unchallenged and undenied.

He operated Nash Wilshire from November 1945 to September 1949 when he sold the business. Nash Wilshire had a net worth varying from $62,000 to $72,-000 during 1947 and in excess of $46,000 on November 30, 1948.

Although Coffman concedes there is due to Aircraft from him the sum of $9240.46, he characterizes the matter as "loans and advances." He also contends that Aircraft is indebted to him in the sum of $12,207.39 on the Nash Wilshire account and that this amount should be offset against the $9240.46 item, with the final result that he is not indebted to Aircraft but Aircraft is indebted to him in the sum of the difference, to-wit, $2966.93.

Conceding for discussion that $12,-207.39 is due Coffman from Aircraft on the Nash Wilshire account, we inquire first, whether Coffman may legally make this setoff. If Coffman is entitled to this setoff, then the decision of this court should stand and under §§ 719 and 720, C.C.P.,[1] Coffman should have the benefit of a plenary action. If he is not entitled to setoff the $12,207.39 against the admitted debt of $9240.46, then we never reach the question involving interpretation of these sections, since he admittedly owed $9240.46 to Aircraft and § 719, C.C.P. and the supplemental proceedings had pursuant thereto were proper.[2]

The Master has succinctly stated in his supplemental report "that under the decision of Pepper v. Litton, [308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281] Coffman * * * may not claim the setoff against the property held by him in trust, and which he had misappropriated. To permit him to do so would be to allow Coffman to place himself in the position of a preferred creditor of Aircraft Company * * *".

The Master was right as rain. When Coffman, as president, director and dominant shareholder of Aircraft, misappropriated the sum of $9240.46 of the funds of Aircraft as found by the Master, he then became an involuntary trustee holding that money in trust for the creditors of Aircraft, including Cobra. To permit him to setoff against these funds so impressed with such a trust, a later accruing obligation to him from Aircraft perverts all sense of justice or equity. He makes himself, by his own act, a preferred creditor of Aircraft. He takes advantage of his wrong in appropriating Aircraft's funds to have them in his possession and thus attempt to effect his claimed setoff.

An examination of the law concerning trustees, corporations, and set-off all confirm this conclusion:

---

1. The substance of §§ 719 and 720, C.C.P. appear in the court's opinion.

2. We are not here concerned with a contempt proceeding where the question of

Coffman's ability to pay might be in question. The appeal is from an order approving the Master report and directing Coffman to pay the $6254.25 to Cobra.

(a) The Civil Code of California defines an involuntary trust as one created by operation of law, Civil Code, § 2217. "One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner." Civil Code, § 2223. Such a trustee may not use the trust property for his own profit, Civil Code, § 2229, nor mingle it with his own, Civil Code, § 2236, and if he disposes of it, he is liable to replace it or to account for its proceeds. Civil Code, § 2237.

By Coffman's attempted setoff he tried to extinguish his liability as a trustee. This he could not do. He "could not use the trust property to secure repayment of advances made by" him "personally." Purdy v. Johnson, 1917, 174 Cal. 521, 529, 163 P. 893, 897. " * * * A trustee, or one bearing a similar fiduciary relationship, may not setoff a claim due the trust estate against his own personal obligation." Harrison v. Adams, 1942, 20 Cal.2d 646, 650, 128 P.2d 9, 12. " * * * A fiduciary cannot set off claims owned by him in his personal capacity against obligations that he assumes as a trustee." Downey v. Humphreys, 1951, 102 Cal.App.2d 323, 331, 227 P.2d 484, 490.

(b) Under the California Corporations Code, a corporation may not make a loan to an officer or director except by vote or written consent of two-thirds of the shares other than the shares held by the benefited officer or director. Corp. Code, § 823(a). After proof that a loan or advance had been made by the corporation (Aircraft) to the officer (Coffman) it would have been his burden to prove the exception of the approval by the shareholders. No such proof is in the record.

Directors may not authorize or ratify the distribution of any part of the corporation assets among its shareholders except in the manner provided in the Corporations Code. Corp.Code, § 824. *A fortiori,* the president alone could not legally perform such an act. Directors performing such illegal acts are liable to the corporation for the benefit of its creditors for its debts and liabilities existing at the time of the violation, Corp. Code § 825; and judgment creditors whose debts or claim arose prior to a violation of Corp.Code, § 824, may sue the corporation and such directors for such wrongful acts. Corp.Code, § 826.

These new sections in the Corporations Code of 1947 were based on former Civil Code sections 366 and 309, as superseded by Sec. 363 and do not change the law. "The president and the directors of a corporation occupy a fiduciary and trust relationship thereto and they are not permitted to assume a position adverse to the corporation. Transfers of corporate property by such officers to themselves are voidable, *and a trust arises in favor of the corporation as against an officer as to anything so received."* Lowe v. Copeland, 1932, 125 Cal.App. 315, 322–323, 13 P.2d 522, 525. (Citations omitted; emphasis supplied.) In 1948 the same language was cited with approval in Abbot Kinney Co. v. Harrah, 84 Cal.App.2d 728, 191 P.2d 761. It is still the law, notwithstanding the revision resulting in the Corporations Code of 1947, supra.

"Directors are also trustees for the stockholders and indirectly for the creditors. * * * Directors and officers of corporations, as well as trustees, have always been held responsible for loss resulting from misappropriations of the trust property made by them or with their consent." Winchester v. Howard, 1902, 136 Cal. 432, 442, 443, 64 P. 692, 69 P. 77, 80. Saracco Tank & Welding Co. v. Platz, 1944, 65 Cal.App.2d 306, at page 315, 150 P.2d 918, involved a foreign corporation but quoted with approval from the Winchester case, supra. " * * * A director, 'Who is at the same time a creditor, is precluded from using his position as director to obtain a preference over other creditors in the payment of his own claims,' " Hanson v. Choynski, 1909, 180 Cal. 275, at page 285, 180 P. 816, at page 820, quoting from Title Insurance & Trust Co. v. California Dev. Co., 171 Cal. 173, 214, 152 P. 542.

Thus, it is crystal clear that Coffman's capacity as a director and president of Aircraft precludes him from availing himself of the claimed $12,000 setoff.

(c) When we view the problem from the standpoint of the law of *setoff* the result is the same. § 440, C.C.P. provides that cross demands "shall be deemed compensated, so far as they equal each other." The California Supreme Court contrary to the general rule, 80 C.J.S., Set-off and Counterclaim, § 58, p. 115, has held that the word "compensated" used in § 440, C.C.P., " * * * can mean nothing more or less than that each of the claimants is paid to the extent that their claims are equal." Jones v. Mortimer, 1946, 28 Cal.2d 627, 633, 170 P.2d 893, 897. Downey v. Humphreys, supra, 102 Cal.App.2d at page 335, 227 P. 2d 484. See Patterson v. Henderson Tire & Rubber Company, 1931, 112 Cal.App. 48, 296 P. 304. Thus, in the ordinary case of cross demands of money under California law, the setoff takes place automatically and is self executing without the intervention of either party or a designation or pleading on such setoff.

However, it is a universal rule, 80 C.J. S., Set-Off and Counterclaim, § 48 a (2), p. 74, that *the demands must be mutual and subsisting between the same parties, and furthermore must be due in the same capacity or right,* and there must be mutuality as to the quality of the right."

[Emphasis supplied.]

This is the rule in California. Harrison v. Adams, supra, 20 Cal.2d at pages 649–650, 128 P.2d 9. In Patterson v. Henderson Tire & Rubber Company, supra, 112 Cal.App. at page 50, 296 P. at page 305, "the set-off or counterclaim allowed by the Superior Court complies with this requirement * * * that the debts 'must not only be due to and from the same person but in the same capacity.'" "It is elementary that a set-off may not be invoked unless the parties and the debts are mutual and that the doctrine of mutuality requires that the debts be due to and from the same persons in the same capacity." Petersen v. Lyders, 1934, 139 Cal.App. 303, 306, 33 P.2d 1030, 1031. The debt due to Coffman from Aircraft belonged to Coffman in his individual capacity. The debt due to Aircraft from Coffman was a trustee obligation.

We have unduly labored a simple problem. Coffman may not legally use his purported setoff, assuming it is valid and legally due from Aircraft since:

(1) He obtained the $9240.46 wrongfully and was an involuntary trustee of the money and liable therefor;

(2) His receipt of the money was in violation of the corporation law of California which made him a trustee of the funds and liable therefor;

(3) Any attempt to set off the $12,000 purportedly due from Aircraft would be permitting him to profit by his own wrong, namely effecting a setoff solely because he had wrongful possession of the $9240.46;

(4) Any attempted setoff of the $12,-000 would be permitting him to prefer himself to an earlier creditor;

(5) Setoff must be mutual and there is no mutuality here since one obligation is that of an involuntary trustee, the other of any individual;

(6) Though setoff in California is self executing, the claims do not compensate in the absence of mutuality;

(7) § 719, C.C.P. provides a remedy within the jurisdiction of the Master and the district court whether Coffman *holds* property for Aircraft or *owes money* to Aircraft.

Since the district court and Master exercised jurisdiction under § 719, C.C.P., and since Coffman may not legally setoff his individual claim of $12,000 against his trustee obligation, the court was in error in reversing the judgment of the district court and the rehearing should have been granted and our prior decision set aside.