[Civ. No. 21746. Second Dist., Div. Three. Jan. 10, 1957.]

SAMUEL H. LASRY, Appellant, v. CHARLES LEDERMAN et al., Respondents.

Albert E. Marks for Appellant.

Alfred S. Gainsley, Nathan April, C. Bernard Kaufman and Robert Komins for Respondents.

SHINN, P. J.—Plaintiff appeals from a judgment of nonsuit in an action for declaratory relief, an accounting, and

other equitable relief, based upon an alleged oral agreement whereby plaintiff and defendants formed a partnership or joint venture for the purpose of purchasing, exploiting and reselling certain real property.

The complaint alleges that plaintiff and defendants entered into an oral agreement in September 1954 whereby they formed a joint venture for the purpose of acquiring title to a building at 11th and Santee Streets in Los Angeles; that each of the parties agreed to pay one-third of the purchase price for said building and that each should own an undivided one-third interest in the joint venture and its assets. It also alleges that during October 1954, without plaintiff's consent and contrary to said agreement, defendants purchased said building and acquired title thereto as tenants in common; that defendants paid $155,000 for the building, with a down payment of one-third of the purchase price, and a deed of trust for the balance. It further alleges that on October 22, 1954, plaintiff tendered to defendants the sum of $30,000 to cover one-third of the down payment and other incidental expenses in connection with the purchase of the building; plaintiff agreed to assume one-third of the obligation due under the trust deed; such tender and agreement were refused by defendants; and that defendants deny that plaintiff has any interest in the joint venture or in the building. Plaintiff alleges on information and belief that defendants have leased a portion of the building for occupancy and are collecting rentals, but that they refuse to account to him for said rentals. He also alleges that he has performed all of the conditions of said oral agreement, save as he has been prevented by defendants, and that he is ready, willing and able to perform those conditions whose performance has been prevented by them. He further alleges that an actual controversy exists with respect to the rights of plaintiff and defendants under their oral agreement. The prayer is for a declaratory judgment that plaintiff and defendants entered into the joint venture and that the building is the property of the joint venture; that title to the building be conveyed to the joint venture; that plaintiff be ordered to pay to defendants one-third of the down payment and to assume one-third of the balance of the trust deed obligation; that defendants be required to account for all rentals and income received from the building, and that a receiver be appointed to take possession of the building and collect the rentals.

The answer admits that defendants purchased the building

and hold title thereto as tenants in common. It denies all the other allegations of the complaint. It was pleaded, as a separate defense, that the alleged oral agreement was for the purchase and sale of an interest in real property and that there was no agreement or memorandum of an agreement subscribed by either defendant.

Trial was to the court. At the commencement of the trial defendants made a motion to exclude evidence on the grounds that the agreement was barred by the statute of frauds and that the complaint did not state a cause of action. Their motion was denied.

Plaintiff was the only witness. The following is the substance of his testimony. Defendants Charles and Benjamin Lederman are brothers and plaintiff had had previous business dealings with them. Around the 1st of September, 1954, plaintiff saw a sign in front of a vacant building at 11th and Santee Streets in Los Angeles indicating that the building was for sale. After obtaining information about the building from a real estate broker, he met defendants at their office on September 12th or 13th. The conversation which took place at that time is the basis of the alleged oral understanding between the parties. Without first disclosing the identity of the property, plaintiff told defendants that he had information about an unoccupied building which could be renovated, leased and eventually resold at a considerable profit. He told them it would be an excellent investment both for income and capital gain purposes and offered to take defendants in on a 50-50 basis. Defendants said that they preferred to go into the venture on a one-third basis. This was agreeable to plaintiff, who then divulged the location of the building and stated that it could be purchased for $175,000 or less. Benjamin Lederman said that the building had been offered to defendants during the previous year for over $300,000 and plaintiff then explained to them that the difference in price was due to the fact that the building was now completely untenanted. Defendants told him to buy the property at the best price for the three of them and each agreed to pay one-third of the purchase price. Plaintiff told defendants that the building was badly run down and would require the expenditure of a good deal of money before it would be suitable for leasing. He said it would be necessary to remodel, paint and decorate it; the elevator would have to be renovated and a new store front would have to be put in. Defendants each agreed to pay one-third of the cost of repairs and

one-third of the operating expenses when requested to do so by plaintiff. Defendants told plaintiff to handle the repairs and the leasing of the renovated building himself. Plaintiff learned several weeks later that defendants had purchased the building for their own benefit. He saw defendants in their office on October 8th. Charles Lederman told him that he and his brother had bought the building so as to put it in the estate of the Ledermans. Plaintiff protested to defendants that they had violated their agreement. They did not deny this. Defendants told him that they paid only $155,000 for the building, with a down payment of only 30 per cent, and that those terms were better than the terms which plaintiff had said he could obtain. On October 22d plaintiff tendered defendants a check for $30,000, representing one-third of the down payment on the building, and his estimate of one-third of the cost of repairs and one-third of the operating expenses until the building was completely leased and operating at a profit. Plaintiff told defendants that he would assume one-third of the remaining trust deed balance. The tender and agreement were refused. Charles Lederman told plaintiff that he had no claim whatsoever against defendants, but Benjamin told him that they would discuss the matter at a later time and that plaintiff would hear from them. When plaintiff heard nothing further from defendants he sent them a letter containing a formal demand.

Defendants' motion for a nonsuit was granted. The court ruled that, apart from the question of the statute of frauds, no joint venture had been created by the parties, that their September conversation amounted to no more than preliminary negotiations with a view to a later, more detailed agreement, and that the complaint did not state a cause of action upon any theory.

The sole question presented on the appeal is whether the court erred in granting a nonsuit upon the ground that the evidence was insufficient to warrant a finding that the parties entered into a joint venture. Interpreting the evidence and the reasonable inferences therefrom in the light most favorable to plaintiff, we are persuaded that the court erred in granting defendants' motion.

A joint venture is an undertaking by two or more persons jointly to carry out a single business enterprise for profit. (*Nelson* v. *Abraham*, 29 Cal.2d 745, 749 [177 P.2d 931].) There must be a community of interest in the enterprise; a sharing of profits and losses; and joint partici-

pation in the conduct of the business. (28 Cal.Jur.2d 478-480.) ■ The existence of a joint venture depends upon the intention of the parties (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 764-765 [128 P.2d 665]); it may be created by an express agreement or its existence may be inferred from their acts and conduct. (*Martter* v. *Byers,* 75 Cal.App.2d 375 [171 P.2d 101]; *Nelson* v. *Abraham, supra,* 29 Cal.2d 745; 28 Cal.Jur.2d 484-486.) As there was no evidence in the instant case of any acts or conduct from which the court could infer the existence of a joint venture, we must look exclusively to the oral agreement.

The trial court expressed the conclusion that the oral understanding between the parties was no more than an agreement to enter into a joint venture at some future date on terms which would be mutually satisfactory to plaintiff and defendants. ■ We are of the opinion that plaintiff's testimony, if believed, would support a finding that a joint venture for the purpose of acquiring, exploiting and selling the building was created by the September agreement. The parties agreed to purchase, renovate, lease and eventually resell the building in the expectation of substantial profit. Each was to have a one-third interest in the property and to share equally in the rentals and in the proceeds of a resale. Each was to contribute one-third of the purchase price and to share equally the expenses of renovation and operation. It is true that there were matters upon which they reached no agreement. Nothing was said respecting the terms of purchase or the cost of repairs. But plaintiff stated the building could be obtained for $175,000 and the parties knew that extensive repairs would be necessary to put the building in tenantable condition. Plaintiff testified that defendants authorized him to take care of the repairs and the leasing but this was merely collateral to the purchase of the property. If the parties understood they had reached no definite agreement for management of the property it would not necessarily follow that they did not reach an agreement to acquire it.

■ In ruling upon the motion for nonsuit it was the duty of the court to assume the truth of the plaintiff's testimony that defendants accepted plaintiff's proposal without qualification or the proposal of any different or additional terms or conditions of the purchase. Since the intentions of the parties would determine whether they entered into a joint venture it was necessary that the court draw inferences from their statements as related by plaintiff.

The court concluded that the parties merely discussed the advisability of a purchase, and intended to give the matter further consideration. Our question is not whether this was a reasonable inference for the court to draw. As to that we express no opinion. The inquiry is whether it was the only reasonable one. Plaintiff contends that the major objective was the purchase of the property, that the price of $175,000 was satisfactory to all parties, and that since no other terms of payment were discussed it was understood that the purchase price would be paid in cash unless better terms could be obtained. He contends it was understood that considerable sums would have to be spent to place the property in suitable condition for occupancy but that it was not the intention to defer the purchase until specific plans for renovation and improvements had been agreed upon. He points out that the agreement to purchase the property was unconditional and that he was to proceed to arrange for its purchase without any further meeting of the parties, and he argues that there was no understanding that there would be some further meeting or discussion with respect to the extent and cost of the improvements before the property was acquired.

It is true that the agreement to which plaintiff testified was indefinite with respect to the improvements that would be found desirable in order to place the property in satisfactory condition for occupancy. This, however, was a matter as to which agreement was not required before the property was purchased. It was something that might have required a considerable amount of study and the consideration of the needs of prospective tenants. If these were matters as to which the parties did not disagree the fact that they did not agree or attempt to agree on a definite plan of improvement would not render incomplete the agreement to engage in a joint venture. ▇ The law requires little formality in the creation of a joint venture and the agreement is not invalid because it may be indefinite with respect to its details. (*Andrews* v. *Bush*, 109 Cal.App. 511 [293 P. 152] ; *Replogle* v. *Ray*, 48 Cal.App.2d 291 [119 P.2d 980] ; *San Francisco Iron etc. Co.* v. *American Milling etc. Co.*, 115 Cal.App. 238 [1 P.2d 1008] ; 48 C.J.S., p. 818 ; 138 A.L.R. 968, 981.)

▇ If there was an agreement for a joint venture the parties assumed the status of fiduciaries and neither one would have had a right, while the joint venture existed, to acquire the subject property to the exclusion of the others.

▇ If the testimony of plaintiff was sufficient to establish

the creation of a joint venture the agreement, although oral, would be valid. Such an undertaking by joint adventurers is not within the purview of the statute of frauds. (*Coward* v. *Clanton*, 79 Cal. 23 [21 P. 359]; *Bates* v. *Babcock*, 95 Cal. 479 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745]; *Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135]; *Arnold* v. *Loomis*, 170 Cal. 95 [148 P. 518]; *Scott* v. *Jungquist*, 179 Cal. 7 [175 P. 412]; *Fitzgerald* v. *Provines*, 102 Cal.App.2d 529 [227 P.2d 860].) If there was no sufficient proof of the creation of a joint venture the agreement between the parties would have been invalid because it was not in writing. (*Mazzera* v. *Wolf*, 30 Cal.2d 531 [183 P.2d 649].)

If the court could reasonably have inferred that the parties agreed to acquire the property for $175,000 and that there was no understanding that the purchase would be conditional upon some future agreement as to terms, or the extent of desired improvements, it was the court's duty in ruling upon the motion for nonsuit to draw those inferences even though opposing inferences could reasonably have been drawn. That is the rule applicable to nonsuits.

The rule is the same whether the trial is to the court or a jury. (*Goldstone* v. *Merchants' etc. Co.*, 123 Cal. 625 [56 P. 776]; *Archibald Estate* v. *Matteson*, 5 Cal.App. 441, 450 [90 P. 723]; *Freese* v. *Hibernia Sav. etc. Soc.*, 139 Cal. 392 [73 P. 172].) The court may not consider the credibility of plaintiff's witnesses or weigh the evidence. It must assume the truth of the testimony. It must draw all reasonable inferences from the evidence that are favorable to the plaintiff and reject those that are unfavorable. The wisdom of the rule in jury cases is obvious. The jury is the exclusive judge of the facts. A plaintiff has a right to have the jury pass upon the factual issues and to a favorable verdict if it would have adequate support in the evidence. It is not so clear that it is a wise rule in nonjury cases. It could well be argued that there is little purpose in requiring a trial judge to listen to a long, drawn-out defense when he is convinced the plaintiff has failed to prove a case. In theory, however, his mind must remain a blank with respect to the credibility of the witnesses and the weight of the evidence and the inferences until the case is submitted. This, of course, is pure fiction. He is not brought to consciousness of his convictions immediately upon submission of the case. But under the rule he must defer his decision although the evidence of the defendant will probably serve no purpose

other than to bury a cause long since dead. If there is a reason for the rule which deprives the judge of the power to grant a nonsuit when he is convinced that the evidence of plaintiff is so unsatisfactory and unreliable as to make it his duty to render a judgment for defendant, other than the fact that it is the prevailing rule (89 C.J.S., p. 396), it has escaped our attention. It is not necessarily the better rule.[1]

In the present case, as in many others, opposing inferences from the facts in evidence are possible. In ruling on a motion for nonsuit the trial court draws those inferences which it deems reasonable and rejects those it deems unreasonable. If the reviewing court is in disagreement with respect to the reasonableness of the inferences the trial court has rejected, and which would lead to a different decision, there is no alternative to a reversal of the judgment. And this is true even if the reviewing court is of the view that the inferences drawn by the trial court are the more reasonable.

Our purpose in discussing the nonsuit rule in nonjury cases is to further emphasize the limitations it places upon the powers of trial courts. It forbids the court to grant a nonsuit even though the plaintiff and his witnesses, although testifying to sufficient facts, are deemed unworthy of belief or their testimony unreasonable and unreliable. It overlooks the fact that the trial judge is the judge of the facts as well as the law and suspends his power to decide questions of

---

[1] "When the trial is before a jury, the court cannot weigh the testimony upon a motion for a nonsuit, for the reason that it cannot weigh it at any time; but, when the trial is without a jury, the court must eventually weigh the testimony for the purpose of determining where the preponderance is, and there is no reason why it should not so weigh it at the earliest possible time, when the rights of the plaintiff will not be cut off by its so doing; and when the plaintiff has introduced all of his proof, and rested, no right of his will be cut off if the court then determines what has been proven. It cannot be presumed that plaintiff's case will be strengthened by the evidence put in by the defendant. If, when plaintiff had submitted his evidence, the defendant had rested without putting in any proof, it is clear that the court would have had to determine the questions of fact made by the pleadings upon a preponderance of the testimony. Hence, under the rule contended for by the appellant, the court might be put in the anomalous position of denying the motion for a nonsuit, and immediately thereafter, upon the refusal of the defendant to put in any proof, deciding the case in his favor. No good purpose could be subserved by refusing to a trial court the right to determine the law in the light of the evidence upon a motion for a nonsuit, the same as upon final submission. It was the right of the court, upon the motion for nonsuit, to decide as to the preponderance of the evidence; and it having decided that such preponderance was with the defendant, and there having been testimony to support such finding, the judgment rendered thereon must be affirmed." (*Lambuth* v. *Stetson & Post Mill Co.*, 14 Wash. 187 [44 P. 148].)

fact until final submission of the case. It often requires reviewing courts to reverse and remand causes for retrial when it is apparent that the judgment of nonsuit was rendered for the sole reason that the trial court deemed the evidence of the plaintiff insufficient to entitle him to any relief, and when there is no logical reason to anticipate that a retrial will result in a different judgment.

The case we are considering is of that class. The trial court, after considering the testimony of plaintiff, drew certain inferences as to the intentions of the parties. The question is whether the court could reasonably have drawn contrary inferences, or in other words, if defendants had submitted their case upon the evidence of plaintiff would a finding that the parties entered into a joint venture have had substantial support in the evidence. In answering that question a reviewing court would have to give full credit to the testimony of plaintiff and deduce therefrom the inferences most favorable to him.

The rule which requires the trial judge in a nonjury case, in ruling on a motion for nonsuit, to assume facts which may be to the contrary of what he believes them to be has been accepted in California without question as a concomitant of the same rule in jury cases. Statutory law requires it in the latter cases for the reason that the jury, and not the court, judges the facts. As applied to nonjury cases it is a court made rule but is nevertheless, for the present, at least, binding upon both trial and reviewing courts. And although we find no weakness in the logic of the Supreme Court of Washington which we have quoted, and again call attention to the rigors of the California rule, there is no alternative to application of the latter rule in the present case, and in all like cases.

The judgment is reversed.

Wood, (Parker), J., and Vallée, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied March 5, 1957.