[Civ. No. 21924. Second Dist., Div. Three. Apr. 3, 1957.]

MARTHA JAMES, Appellant, v. MONTAGUE N. HERBERT et al., Defendants; JOEL H. PRESCOTT, JR., et al., Respondents.

Thomas F. McCue for Appellant.

Arthur S. Wolpe and Bernard Newman for Respondents.

VALLÉE, J.—Appeal by plaintiff from a judgment of dismissal in favor of defendants Prescott, Jr., and Roberts entered on an order sustaining their general and special demurrer to the amended complaint with leave to amend. Plaintiff declined to amend and the judgment of dismissal followed.[1] The record does not disclose the ground or grounds on which the demurrer was sustained. We are in accord with plaintiff's criticism of this practice.[2]

The amended complaint, to be referred to as the complaint, is for damages arising out of an alleged conspiracy of defendants to exclude plaintiff from further participation in the operation and management of a joint venture and to deprive her of her share of the net profits thereof.

The allegations of the complaint may be epitomized as follows:

Plaintiff is a licensed real estate broker engaged in the real estate business in Palm Springs. In November 1953 she entered into an oral agreement of joint venture with defendants Herbert and Prescott, Jr. It was agreed: 1. Herbert would contribute to the operations of the venture three parcels of realty aggregating 60 acres, which he owned in the vicinity of Cathedral City. He would be paid out of the venture assets for the property at its fair and reasonable value as of the date of the organization of the venture. 2. Defendant Prescott, Jr., would arrange for the financing of improvements which the parties planned to make on the property and supervise construction operations in connection with any residences or other buildings to be constructed thereon. He

---

[1]Defendant Herbert also filed a general and special demurrer which was sustained with leave. We are told that no judgment has been entered with respect to the case against him. The appeal concerns only defendants Roberts and Prescott, Jr.

[2]Plaintiff says: ''Before discussing in detail the various points raised by respondents in their Demurrer to First Amended Complaint, we must in all sincerity go on record as deploring a practice which appears to have become more and more prevalent in the trial courts, to wit, the practice of failing to specify what ground or grounds of the demurrer appear to the court to be well taken and what grounds, if any, are in the opinion of the trial court not meritorious. In such a case as the one at bar where a demurrer, both general and special, is interposed to a complaint and some of the grounds are obviously wholly without merit and other grounds perhaps debatable, we think that the trial courts are doing a disservice to the appellate courts and to the parties to the action in merely, as here causing a minute order to be entered reading 'Demurrer sustained, 20 days to amend.' Such a ruling has the effect of unduly lengthening the record before the appellate court and consumes unnecessary time of court and counsel in the discussion of facts and law pertaining to points raised by the demurrer obviously having no merit whatsoever.''

would receive a reasonable builder's fee to be fixed by the joint venturers for his services. 3. Plaintiff would actively participate in the management of the business, contribute her services and the use of her real estate office, assist in the making of arrangements for loan commitments, and cooperate with her coadventurers in the planning of the size, shape, and location of lots into which the realty was to be subdivided and in the selection and choice of the type and kind of construction and other improvements to be erected thereon, and generally to participate actively in the supervision of the enterprise. She would be given an exclusive contract for the sale of all parcels contributed by defendant Herbert to the enterprise and would be entitled to receive and retain as her own the usual and customary real estate broker's commissions prevailing in the general area. 4. Any losses which might result from the operations of the venture would be borne by defendants Herbert and Prescott, Jr.; but the net profits would be divided equally.

In November 1953, pursuant to the agreement, the joint venturers entered into the business so contemplated and performed their respective duties and obligations to each other to and including the month of January 1954. By mutual agreement they fixed and determined the price payable to Herbert for his land and the terms of payment; made arrangements for the financing of construction work in connection with the enterprise; engaged surveyors and caused subdivision maps to be made of the land, caused it to be divided into 196 lots of various sizes and descriptions, and adopted plans and specifications for the construction of residences on the lots; ascertained and determined the cost of acquisition, construction, and expenses of sale and determined prices for the sale of the lots so improved so as to yield to the venture a net profit of not less than $1,000 a lot or a total minimum profit of $196,000. At that time and place there existed a ready market for the sale of the properties so improved at the prices established by the joint venturers; buyers ready, able, and willing to purchase the properties were readily available; and it was reasonably certain that the venture would earn from the operations within the period of a year from November 1953 a net profit of not less than $196,000 of which plaintiff would have been entitled to one-third, amounting to not less than $65,333.33.

Plaintiff performed each and every duty and obligation required of her by the agreement, including the contribution

to the venture of her time, the facilities of her office and the services of her employees, and has incurred and paid great expense for telephone and other services in reliance on the confidential relationship existing between her and her co-adventurers, and at all times has been ready, able, and willing to fully perform all duties and obligations on her part to be performed in accordance with the agreement; but defendants Herbert and Prescott, Jr., in January 1954, entered into a wrongful conspiracy with each other and with defendant Roberts who knew that the venture between plaintiff and Herbert and Prescott, Jr., was still in force and effect, to exclude her from further participation in the venture, to cheat and defraud her and deprive her of her interest therein and her share of the net profits thereof, and to obtain and retain the business and profits for themselves.

Pursuant to the conspiracy, defendants excluded plaintiff from the management and participation in the venture, converted to their own use all of the assets, and have used and dealt with the property for their own profit and for purposes wholly unconnected with the business of the venture, have entered into an association with each other adverse to the interests of plaintiff—all without notice of, or the consent of, plaintiff—and have carried away and concealed from plaintiff the books and records of the venture and have wrongfully withheld from her all information concerning the assets and affairs thereof, and have destroyed the business of the venture and have terminated it. By reason of the acts and conduct of defendants she has suffered damage in the sum of $65,333.33. Plaintiff then alleges that defendants were guilty of oppression, fraud, and malice in their acts and conduct with relation to her, and she should be awarded exemplary damages of $25,000.

Defendants Roberts and Prescott, Jr., demurred generally and specially. As we have stated, the court sustained the demurrer without stating the ground or grounds. Plaintiff appeals.

The first question is whether the complaint states facts sufficient to constitute a cause of action for conspiracy. ▪ The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting from the act or acts done in furtherance of the common design. ▪ Where two or more persons are sued for a civil wrong, it is the civil wrong resulting in damage, and not the conspiracy, which constitutes the cause of action. (*Schaefer*

v. *Berinstein,* 140 Cal.App.2d 278, 293 [295 P.2d 113].)

A conspiracy may be inferred from the nature of the acts done, the relations of the parties, and the interests of the alleged conspirators, and other circumstances. (*Globe Dairy Lunch Co.* v. *Joint etc. Culinary Workers,* 117 Cal.App.2d 190, 193 [255 P.2d 94].)

To be entitled to a joint recovery of damages against the defendants for inflicting a wrong through a conspiracy, the plaintiff must allege and prove: a concert of action between the defendants to accomplish the purpose of the conspiracy; that their actions were illegal and in furtherance of a common scheme or design to achieve the unlawful purpose of the conspiracy; and their knowledge of the conspiracy and its unlawful purpose. (*Clark* v. *Lesher,* 106 Cal.App.2d 403, 409 [235 P.2d 71]; 11 Cal.Jur.2d 277, § 50.)

In *Moropoulos* v. *C. H. & O. B. Fuller Co.,* 186 Cal. 679 [200 P. 601], a partnership was formed for the operation of a dairy on leasehold premises. The plaintiff was ousted by his partner, Karales, and the defendants; and the leasehold, which was the basis of the partnership business, was assigned to another. The action was for damages on the ground the defendants and the plaintiff's partner had conspired to and had fraudulently appropriated and destroyed the partnership business. The court held (p. 685):

"The allegation, therefore, of the subsequent ouster of plaintiff by the defendants and the averment that it was done wrongfully and in pursuance of the alleged conspiracy with Karales, and that in pursuance of such wrongful and unlawful purpose they took possession of the dairy ranch, put Karales in charge, converted to their own use the growing crops, and deprived the plaintiff of any further use of the premises under this leasehold furnishes the basis for a cause of action."

In *Greenwood* v. *Mooradian,* 137 Cal.App.2d 532 [290 P.2d 955], and in *Abbot Kinney Co.* v. *Harrah,* 84 Cal.App.2d 728 [191 P.2d 761], the allegations with respect to the conspiracy itself were no more detailed than those at bar. We think a cause of action for civil conspiracy is sufficiently alleged.

We are not concerned with the truth of the allegations; they are presumed to be true. (*Clark* v. *Lesher,* 106 Cal. App.2d 403, 409 [235 P.2d 71].)

"If there was an agreement for a joint venture the parties assumed the status of fiduciaries and neither one would have had a right, while the joint venture existed, to

acquire the subject property to the exclusion of the others.'' (*Lasry* v. *Lederman,* 147 Cal.App.2d 480, 487 [305 P.2d 663].)

Defendants contend the complaint does not plead all the elements of a joint venture relationship. The point is untenable. ▮ A joint venture is an undertaking by two or more persons jointly to carry out a single enterprise for profit. (*Goldberg* v. *Paramount Oil Co.,* 143 Cal.App.2d 215, 219 [300 P.2d 329].) ▮ Although it is usual to provide for an equal sharing of profits and losses, the parties may agree that all members shall participate in the profits, and that only some of them shall bear the losses. (*Wilson* v. *Brown,* 96 Cal.App. 140, 142 [273 P. 847].) ▮ The contributions of the respective parties need not be equal or of the same character. (30 Am.Jur. 681, § 10.) ▮ The existence of a joint venture depends on the intention of the parties. (*Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, 764-765 [128 P.2d 665].) ▮ The law requires little formality in its creation, and the agreement is not invalid because it may be indefinite with respect to details. (*Lasry* v. *Lederman,* 147 Cal.App.2d 480, 487 [305 P.2d 663].) The complaint alleges facts sufficient to show the creation of a joint venture.

▮ Defendants argue that because Herbert owned the realty and as a part of his contribution to the joint venture he was to sell the realty to it, and the venture and venturers were thus going to acquire an interest in real property, the agreement was within the statute of frauds and unenforceable. In *Moropoulos* v. *C. H. & O. B. Fuller Co., supra,* 186 Cal. 679, it was held that where one holding a lease of realty entered into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease was thereby vested in the partnership and a formal assignment of the lease to the partnership was not required. In *Wilson* v. *Brown,* 96 Cal.App. 140 [273 P. 847], *Champagne* v. *Passons,* 95 Cal.App. 15 [272 P. 353], and *Parker* v. *Trefry,* 58 Cal.App.2d 69 [136 P.2d 55], one of the joint venturers had interests in realty and oral agreements were entered into with other parties for the transfer of those interests to a joint venture. Joint ventures were held to have been validly formed. The agreement alleged at bar is not within the purview of the statute of frauds. (*Coward* v. *Clanton,* 79 Cal. 23 [21 P. 359]; *Bates* v. *Babcock,* 95 Cal. 479 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745]; *Koyer* v.

*Willmon,* 150 Cal. 785 [90 P. 135]; *Arnold* v. *Loomis,* 170 Cal. 95 [148 P. 518]; *Scott* v. *Jungquist,* 179 Cal. 7 [175 P. 412]; *Fitzgerald* v. *Provines,* 102 Cal.App.2d 529 [227 P.2d 860]; *Lasry* v. *Lederman,* 147 Cal.App.2d 480, 487-488 [305 P.2d 663].)

Defendants assert anticipated profits from a new venture are too uncertain and speculative to constitute the basis for computation of damages. ▆ Where, without fault on his part, one party to a contract who is willing to perform is prevented from doing so by the other party, the primary measure of damages is the amount of his loss, which may consist of his reasonable outlay or expenditure toward performance and the anticipated profits which he would have derived from performance. (*Buxbom* v. *Smith,* 23 Cal.2d 535, 541 [145 P.2d 305].) ▆ Where the prospective profits are the natural and direct consequences of the breach of the contract they may be recovered. ▆ Profits are part and parcel of the contract itself, entering into and constituting a portion of its very element; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed, perhaps, the only inducement to the arrangement. (*Hoag* v. *Jenan,* 86 Cal.App.2d 556, 562-563 [195 P.2d 451].) ▆ Damages consisting of the loss of anticipated profits need not be established with certainty. It is sufficient that it be shown as a reasonable probability that the profits would have been earned except for the breach of the contract. (*Stott* v. *Johnston,* 36 Cal.2d 864, 875 [229 P.2d 348, 28 A.L.R.2d 580]; *Hacker etc. Co.* v. *Chapman V. Mfg. Co.,* 17 Cal.App.2d 265, 267 [61 P.2d 944].)

Plaintiff alleges that the venture had progressed to the point where the joint venturers had ascertained all the costs and expenses in connection with the acquisition of, construction on, and sale of the subdivision properties and had fixed and determined the price for sale of each parcel, aggregating 196 in number; there then existed a ready market for the properties; and the sale of the properties could have been made so as to provide a total net profit of not less than $196,000, or $65,333.33 for her. The complaint is certain as to what the damage consists of and as to its extent.

▆ Finally, defendants assert plaintiff did not plead sufficient facts for an award of exemplary damages. This

contention is also untenable. A general allegation that a defendant acted wilfully and knowingly in defiance of plaintiff's repeated protests and that the defendant's conduct was oppressive and malicious and for the purpose of damaging the plaintiff's lawful business has been held sufficient for the recovery of exemplary damages. (*Sterling Drug, Inc.* v. *Benatar*, 99 Cal.App.2d 393, 399-400 [221 P.2d 965]. Also see *Bergevin* v. *Morger*, 130 Cal.App.2d 590, 592-593 [279 P.2d 136]; *Morgan* v. *French*, 70 Cal.App.2d 785, 789-790 [161 P.2d 800]; *Kouff* v. *Bethlehem-Alameda Shipyard, Inc.*, 90 Cal.App.2d 322, 325 [202 P.2d 1059].) Plaintiff pleads the elements that make up the basis of her claim for such damages. She alleges defendants were guilty of oppression, fraud, and malice, and the details of the fraud and malice are specifically alleged.

The complaint states facts sufficient to constitute a cause of action. With respect to the special demurrer, defendants merely say its validity is so obvious as to require no argument. Plaintiff argues at some length that it is not well taken. In view of defendants' failure to sustain it, we should ignore it. However, our examination of the complaint discloses no basis for the special demurrer. ■ Uncertainty arising out of the legal effect of facts alleged is not a ground for demurrer. (*County of Santa Clara* v. *Hayes Co.*, 43 Cal. 2d 615, 619-620 [275 P.2d 456].) ■ While there are some uncertainties in the complaint, they appear to be matters within the knowledge of defendants. A demurrer does not lie to such matters. (*Turner* v. *Milstein*, 103 Cal.App.2d 651, 658 [230 P.2d 25].) The complaint is sufficient as against both the general and special demurrers.

Reversed.

Shinn, P. J., and Wood (Parker), J., concurred.