316 P.2d 733]

[Civ. No. 22490. Second Dist., Div. Two. Oct. 28, 1957.]

MARTHA JAMES, Appellant, v. MONTAGUE N. HERBERT, Respondent.

Thomas F. McCue for Appellant.

No appearance for Respondent.

FOX, J.—Plaintiff appeals from a judgment of dismissal in favor of defendant Herbert following an order sustaining his general and special demurrer to the amended complaint with leave to amend. Plaintiff, however, declined to amend, hence the dismissal.

By her amended complaint plaintiff seeks to recover damages arising out of an alleged conspiracy of defendant Herbert and his codefendants Prescott and Roberts to exclude her from further participation in the operation and management of a joint real estate venture and to deprive her of her share of the profits therefrom.

A general and special demurrer on behalf of defendants Prescott and Roberts was sustained with leave to amend, but plaintiff declined to amend, consequently a judgment of dismissal was entered in their favor.* Plaintiff appealed. Division Three of this court, in a well considered opinion by Justice Vallee, reversed that judgment. (See *James* v. *Herbert*, 149 Cal.App.2d 741 [309 P.2d 91].)

Since the identical amended complaint is involved in both rulings, we adopt the summary of its allegations, which we consider fair and comprehensive, as set forth on pages 744-746 of 149 Cal.App.2d as follows:

"Plaintiff is a licensed real estate broker engaged in the

---

*This was before the judgment in favor of Herbert was entered.

real estate business in Palm Springs. In November 1953 she entered into an oral agreement of joint venture with defendants Herbert and Prescott, Jr. It was agreed: 1. Herbert would contribute to the operations of the venture three parcels of realty aggregating 60 acres, which he owned in the vicinity of Cathedral City. He would be paid out of the venture assets for the property at its fair and reasonable value as of the date of the organization of the venture. 2. Defendant Prescott, Jr., would arrange for the financing of improvements which the parties planned to make on the property and supervise construction operations in connection with any residences or other buildings to be constructed thereon. He would receive a reasonable builder's fee to be fixed by the joint venturers for his services. 3. Plaintiff would actively participate in the management of the business, contribute her services and the use of her real estate office, assist in the making of arrangements for loan commitments, and cooperate with her coadventurers in the planning of the size, shape, and location of lots into which the realty was to be subdivided and in the selection and choice of the type and kind of construction and other improvements to be erected thereon, and generally to participate actively in the supervision of the enterprise. She would be given an exclusive contract for the sale of all parcels contributed by defendant Herbert to the enterprise and would be entitled to receive and retain as her own the usual and customary real estate broker's commissions prevailing in the general area. 4. Any losses which might result from the operations of the venture would be borne by defendants Herbert and Prescott, Jr.; but the net profits would be divided equally.

"In November 1953, pursuant to the agreement, the joint venturers entered into the business so contemplated and performed their respective duties and obligations to each other to and including the month of January 1954. By mutual agreement they fixed and determined the price payable to Herbert for his land and the terms of payment; made arrangements for the financing of construction work in connection with the enterprise; engaged surveyors and caused subdivision maps to be made of the land, caused it to be divided into 196 lots of various sizes and descriptions, and adopted plans and specifications for the construction of residences on the lots; ascertained and determined the cost of acquisition, construction, and expenses of sale and determined prices for the sale of the lots so improved so as to yield to the venture a net profit

of not less than $1,000 a lot or a total minimum profit of $196,000. At that time and place there existed a ready market for the sale of the properties so improved at the prices established by the joint venturers; buyers ready, able, and willing to purchase the properties were readily available; and it was reasonably certain that the venture would earn from the operations within the period of a year from November 1953 a net profit of not less than $196,000 of which plaintiff would have been entitled to one-third, amounting to not less than $65,333.33.

"Plaintiff performed each and every duty and obligation required of her by the agreement, including the contribution to the venture of her time, the facilities of her office and the services of her employees, and has incurred and paid great expense for telephone and other services in reliance on the confidential relationship existing between her and her coadventurers, and at all times has been ready, able and willing to fully perform all duties and obligations on her part to be performed in accordance with the agreement; but defendants Herbert and Prescott, Jr., in January 1954, entered into a wrongful conspiracy with each other and with defendant Roberts who knew that the venture between plaintiff and Herbert and Prescott, Jr., was still in force and effect, to exclude her from further participation in the venture, to cheat and defraud her and deprive her of her interest therein and her share of the net profits thereof, and to obtain and retain the business and profits for themselves.

"Pursuant to the conspiracy, defendants excluded plaintiff from the management and participation in the venture, converted to their own use all of the assets, and have used and dealt with the property for their own profit and for purposes wholly unconnected with the business of the venture, have entered into an association with each other adverse to the interests of plaintiff—all without notice of, or the consent of plaintiff—and have carried away and concealed from plaintiff the books and records of the venture and have wrongfully withheld from her all information concerning the assets and affairs thereof, and have destroyed the business of the venture and have terminated it. By reason of the acts and conduct of defendants she has suffered damage in the sum of $65,333.33. Plaintiff then alleges that defendants were guilty of oppression, fraud, and malice in their acts and conduct with relation to her, and she should be awarded exemplary damages of $25,000.''

The court held that the amended complaint sufficiently alleged: (1) a cause of action for civil conspiracy; (2) the creation of a joint venture that was not within the purview of the statute of frauds; (3) that it was sufficiently certain as to what the damage consisted of and as to its extent; (4) that it contained sufficient foundation for an award of exemplary damages; and (5) that the special demurrer was not well taken. We concur in these rulings and adopt the reasoning by which each was reached as our own.

Since the amended complaint is sufficient as against both the general and special demurrer, the judgment must be reversed. (*James* v. *Herbert, supra.*)

The judgment is reversed.

Moore, P. J., and Ashburn, J., concurred.