[Civ. No. 26915. Second Dist., Div. One. Sept. 6, 1963.]

JEROLD GROSS et al., Plaintiffs and Respondents, v. JOSEPH RAEBURN et al., Defendants and Appellants.

Perry Bertram and John Joseph Hall for Defendants and Appellants.

Joseph Doyle, Howard L. Winton and Orlan S. Friedman for Plaintiffs and Respondents.

FOURT, J.—This is an appeal by defendants from a judgment entered in favor of plaintiffs in an action between joint venturers in real property.

This action involves two joint ventures created by oral agreement. The first joint venture concerned a parcel of real property on Bronson Avenue in the city of Los Angeles. There was no dispute as to the existence of the Bronson Avenue joint venture or as to which property constituted its subject matter. The alleged second joint venture, entered into when the Bronson Avenue joint venture was in progress, related to two adjacent and contiguous parcels of real property located at 1230 and 1231 Horn Avenue in the city of Los Angeles. There was a dispute, among other things, as to whether the Horn Avenue joint venture involved both the 1230 and 1231 Horn Avenue property or was limited to the 1230 Horn Avenue property.

In order to avoid repetition, an initial statement of facts

will be dispensed with, and the relevant facts incorporated in the body of the opinion.[1]

Plaintiffs by a first amended complaint sought (1) declaratory relief concerning an oral joint venture on real property located on Bronson Avenue, Los Angeles; (2) declaratory relief concerning an oral joint venture on real property located on 1230 and 1231 Horn Avenue, Los Angeles; (3) dissolution and winding up of the joint ventures; (4) damages for breach of contract; and (5) damages for fraud. Defendants, by cross-complaint, sought (1) damages for fraud relating to the Bronson property; (2) damages for fraud relating to a joint venture on the 1230 Horn Avenue property; (3) dissolution of the joint venture on the 1230 Horn Avenue property; (4) breach of contract; (5) declaratory relief relative to the purported joint venture on the 1231 Horn Avenue property (i.e., a declaration that no joint venture existed on said 1231 Horn Avenue property); and (6) to quiet title to the 1231 Horn Avenue property.

After trial by the court sitting without a jury the trial court found for plaintiffs in a memorandum ruling dated November 21, 1961. The findings of fact and conclusions of law were filed January 8, 1962.[2] An interlocutory judgment

---

[1] Most of defendant's contentions relate to purported insufficiency of the evidence to support the trial court's findings of fact.

[2] The findings of fact and conclusions of law provide in pertinent part as follows:

"FINDINGS OF FACT
"I
"..................................................
"II
"..................................................
"III
"..................................................
"IV
"It is true that, on or about the 14th day of October, 1959, the plaintiffs . . . as one party, and defendants . . . as the second party, made and entered into an oral agreement of joint venture concerning a certain parcel of improved real property commonly known as 1543-½ to 1553-½ Bronson Avenue . . .
"V
"It is true that, under the terms of said oral agreement of joint venture, the parties agreed to purchase the said property on Bronson Avenue as tenants in common with . . . [defendants] having an undivided one-half interest, and with plaintiffs having an undivided one-half interest, with each of the parties, as a tenant in common, to pay one-half of the down payment for the purchase of said parcel of property, and with each party to be liable for one-half of the remainder of the purchase price, costs of financing, and costs of construction over and above financing available. Under the said oral agreement of joint venture, the parties agreed to construct an apartment building on the said parcel of real property, with necessary appurtenances.

based upon said findings and conclusions was entered on January 11, 1962, and a final judgment was entered on May 17, 1962. After denial of defendants' motion for a new trial, the within appeal followed.

 Defendants' first contention relates to the statute of frauds. Defendants owned the real property located at 1231 Horn Avenue prior to the formation of the purported joint venture. They assert that (assuming the existence of an oral agreement of joint venture) an oral agreement of joint venture concerning real property is violative of the statute of

---

"VI

"It is true that the said Bronson Avenue real property was acquired for the benefit of their joint venture, by the parties, as tenants in common.

"VII

"It is true that subsequent to the making of said Bronson Avenue oral agreement of joint venture, the defendants . . . have been guilty of conduct which did affect prejudicially the carrying on of the business of joint venture, in this:

"A. Said defendants informed said plaintiffs that unless and until the plaintiffs acceded and agreed to the wishes of said defendants with respect to a separate and distinct joint venture between the parties, the defendants would not proceed with any joint venture between the parties, and said defendants did not proceed with any joint venture between the parties.

"B. Said defendants, without the consent of plaintiffs, and against their wishes, summarily abrogated the said joint venture agreement.

"VIII

"It is true that at the time of the refusal of the defendants . . . to proceed with the Bronson Avenue joint venture, the plaintiffs had duly performed all terms and conditions by them to be performed under the oral agreement of joint venture . . . and it is true that further performance by the plaintiffs was prevented by the conduct of said defendants.

"IX

"It is true that the conduct of said defendants constituted a breach of the Bronson Avenue joint venture agreement.

"X

"It is true that the plaintiffs performed services and devoted time over an extended period of time for and on behalf of the Bronson Avenue joint venture, and it is true that the plaintiffs were deprived of the opportunity to complete the Bronson Avenue joint venture by the conduct of defendants, and it is true that, thereby, as a direct and proximate result of the breach of the said agreement of joint venture by the defendants, the plaintiffs have been damaged in the sum of $15,000.00.

"XI

"It is true that it is not now reasonably practicable for said parties to carry on said Bronson Avenue agreement of joint venture, and it is true that the said joint venture should be dissolved and wound up.

"XII

"It is true that on or about the 10th day of June, 1960, the plaintiffs . . . as one party, and the defendants . . . as the second party, made and entered into an oral agreement of joint venture to accomplish the purchase of a certain parcel of improved real property commonly known as 1230 Horn Avenue . . . and to bring the said parcel of property together with a certain contiguous parcel of improved real property commonly

frauds where the real property was owned by one of the parties to the joint venture prior to the formation of the joint venture.

What is stated in *James v. Herbert,* 149 Cal.App.2d 741, 748-749 [309 P.2d 91], is dispositive of defendants' contention:

"Defendants argue that because Herbert owned the realty and as a part of his contribution to the joint venture he was to sell the realty to it, and the venture and venturers were thus going to acquire an interest in real property, the agree-

known as 1231 Horn Avenue . . . under the common ownership of the parties, said parties to share the profits and losses equally in the joint venture, and the parties to have an equal interest in the combined properties; that thereafter the parties undertook to transact the business of the combined Horn properties joint venture . . .

"XIII

"It is true that under the terms of the Horn Avenue agreement of joint venture, the agreement was to become effective as of the date the parties actually acquired the said parcel of real property known as 1230 Horn Avenue and that the said property was actually acquired by the parties pursuant to said agreement on or about July 1, 1960. That under the terms of this agreement, each party was to contribute the sum of $10,000.00 toward the down payment on the property at 1230 Horn Avenue, and each party was to be liable for one-half of the note given in payment of the remainder of the purchase price, said note being secured by a deed of trust on the property.

"XIV

"It is true that . . . [defendants], prior to entering into the said agreement of joint venture with plaintiffs, owned the property commonly known as 1231 Horn Avenue, the eastern boundary of which said property was, and is, for a distance, contiguous to the western line of the aforesaid property known as 1230 Horn Avenue, and the parties agreed that the market value of 1231 Horn Avenue was $76,000, and further agreed that it was the desire and intention of both parties to bring both properties under their common ownership (in order to be in a position to realize the greatest potential from both parcels). It was agreed that the defendants then had an equity of about $45,000 in the said 1231 Horn Avenue property, and that the then existing encumbrance was in the amount of about $31,000.

"XV

"It is true that under the terms of the Horn agreement of joint venture, it was agreed that the . . . [defendants], would convey to plaintiffs an undivided one-half interest in and to the property at 1231 Horn Avenue for a total consideration of $38,000, provided the plaintiffs paid, in cash, to . . . [defendants], within six months from the date of the agreement, the said sum of $38,000 less one-half the then remaining balance due on the note secured by a deed of trust on the said property, which constituted the encumbrance against the property.

"XVI

"It is true that on or about the 10th day of June, 1960, the plaintiffs reposed great confidence and trust in . . . [defendants].

"XVII

"It is true that a dispute arose and an actual controversy existed between plaintiffs . . . on the one part and defendants . . . on the other part, as to their respective legal rights, duties and obligations under and by virtue of the said oral agreement of joint venture.

ment was within the statute of frauds and unenforceable. In *Moropoulos* v. *C. H. & O. B. Fuller Co., supra,* 186 Cal. 679 [200 P. 601], it was held that where one holding a lease of realty entered into a partnership with another agreeing to the use and possession of the leased property in the business, a valid interest in the lease was thereby vested in the partnership and a formal assignment of the lease to the partnership was not required. In *Wilson* v. *Brown,* 96 Cal.App. 140 [273 P. 847], *Champagne* v. *Passons,* 95 Cal.App. 15 [272 P. 353], and *Parker* v. *Trefry,* 58 Cal.App.2d 69 [136 P.2d 55], one of the joint venturers had interests in realty and oral agreements were entered into with other parties for the

"XVIII

''It is true that at the time of the refusal of defendants to proceed with the Horn Avenue joint venture, the plaintiffs had duly performed all terms and conditions by them to be performed under the oral agreement of joint venture concerning the Horn Avenue properties, and it is true that further performance by plaintiffs under the said agreement of joint venture was prevented by the conduct of the defendants.

''XIX

''It is true that the improved real property at 1230 Horn Avenue was acquired by the parties for the benefit of their joint venture as tenants in common.

''XX

''It is true that the improved real property at 1231 Horn Avenue was and is held by the defendants for the benefit of the joint venture between the parties.

''XXI

''It is true that following the making of the Horn Avenue joint venture agreements the defendants . . . refused to proceed with said joint venture, and summarily abrogated the said joint venture. It is true that the said conduct of the said defendants constituted a breach of the Horn Avenue agreement of joint venture by the said defendants and each of them.

''XXII

''It is not true that plaintiffs were guilty of fraud or misrepresentation by which the defendants were induced to enter into the Bronson Avenue agreement of joint venture.

''XXIII

''It is not true that plaintiffs were guilty of fraud or misrepresentation by which the defendants were induced to enter into the Horn Avenue agreement of joint venture.

''XXIV

''It is not true that any conduct on the part of plaintiffs constituted a breach of the Bronson Avenue agreement of joint venture.

''XXV

·''It is not true that any conduct on the part of plaintiffs constituted a breach of the Horn Avenue agreement of joint venture.

''XXVI

"It is not true that, at the time defendants promised to perform under the Horn Avenue agreement of joint venture, defendants did not intend to observe and perform any one or more of the promises to be observed and performed by defendants.

''XXVII

''It is not true that the defendants have suffered any damage, by reason of any conduct of plaintiffs, in any sum or sums whatsoever.

transfer of those interests to a joint venture. Joint ventures were held to have been validly formed. The agreement alleged at bar is not within the purview of the statute of frauds. (*Coward* v. *Clanton*, 79 Cal. 23 [21 P. 359]; *Bates* v. *Babcock*, 95 Cal. 479 [30 P. 605, 29 Am.St.Rep. 133, 16 L.R.A. 745]; *Koyer* v. *Willmon*, 150 Cal. 785 [90 P. 135]; *Arnold* v. *Loomis*, 170 Cal. 95 [148 P. 518]; *Scott* v. *Jungquist*, 179 Cal. 7 [175 P. 412]; *Fitzgerald* v. *Provines*, 102 Cal.App.2d 529 [227 P.2d 860]; *Lasry* v. *Lederman*, 147 Cal. App.2d 480, 487-488 [305 P.2d 663].)''

 Defendants' next contention is that there is insufficient evidence to support the finding (i.e., finding of fact

---

''CONCLUSIONS OF LAW

"From the foregoing findings of fact the Court concludes, as a matter of law, as follows:

''I

''That the parties stood in a fiduciary relationship to one another with respect to the Bronson Avenue joint venture between them, and with respect to the Horn Avenue joint venture between them.

''II

''That the defendants . . . breached the Bronson Avenue agreement of joint venture between the parties.

''III

''That the plaintiffs . . . are entitled to an interlocutory judgment against the defendants . . . in the sum of $15,000, together with costs of suit in the sum of $————.

''IV

''The Horn Avenue agreement of joint venture between the parties is not within the provisions of the Statute of Frauds.

''V

''That the plaintiffs . . . are entitled to an interlocutory judgment against the defendants . . .adjudging that the real property commonly known as 1230 Horn Avenue was acquired for the benefit of the joint venture between the parties. That the real property commonly known as 1231 Horn Avenue was and is held by the . . . [defendants] for the benefit of the joint venture, with plaintiffs and said defendant[s] having equal interests in the combined properties, with the profits and losses of the joint venture to be shared equally by plaintiffs as one party, and . . . [defendants] as the other party.

''VI

''That the duties of plaintiffs to tender to defendants a sum equal to one-half of the agreed value of the parcel of real property commonly known as 1231 Horn Avenue was excused because of the repudiation by the defendants of the agreement of joint venture between the parties before such performance was due by plaintiffs.

''VII

''That in an accounting (as hereinafter provided in the Interlocutory Judgment between the parties), the defendants . . . are entitled to a credit equalling the amount plaintiffs owe as their one-half contribution for 1231 Horn Avenue.

''VIII

''That the defendants . . . breached the Horn Avenue agreement of joint venture between the parties.

''IX

''That the defendants shall take nothing by their cross-complaint.''

XII—footnote 2, *supra*) that plaintiffs and defendants entered into an oral agreement of joint venture to combine the 1230 and 1231 Horn Avenue properties. The gist of this contention is that terms essential to the formation of a joint venture are missing—that there were merely preliminary negotiations. Defendants place great emphasis on the cases of *Louis Lesser Enterprises, Ltd.* v. *Roeder*, 209 Cal.App.2d 401 [25 Cal.Rptr. 917] and *Pacific Hills Corp.* v. *Duggan*, 199 Cal.App.2d 806 [19 Cal.Rptr. 291].

The evidence as to whether the joint venture covered 1230 Horn Avenue alone, as contended by defendants, or included both 1230 and 1231 Horn Avenue as a combined project, as contended by plaintiffs, was conflicting. Viewing the evidence in the light most favorable to supporting the trial court's determination, the following is relevant on the question of the existence of the joint venture.

The combining of 1230 and 1231 Horn Avenue parcels as a suitable site for a large project was first discussed by the parties during the winter of 1959-1960, after the parties returned from a joint trip to San Francisco. Prior to the departure of defendants to Europe, the parties discussed a project on the combined Horn Avenue properties as an alternative to a Hollywood Boulevard project. The price of $76,000 was mentioned as a value for 1231 Horn Avenue.

In March 1960 just prior to defendants' departure to Europe, defendants stated that they would sell to plaintiffs a one-half interest in defendants' 1231 Horn Avenue property, so that when plaintiffs and defendants purchased 1230 Horn Avenue, they would each have a one-half interest in the combined 1230-1231 Horn Avenue properties.

On June 7, 1960, after defendants returned from Europe, the parties discussed the fact that the Hollywood Boulevard project was out of their reach and defendants stated "all we have is the Horn."

The parties discussed the type of project to build on the combined Horn Avenue properties. On June 9, 1960, the defendants stated that they were willing to put the 1231 Horn Avenue property in at $76,000 and plaintiffs said "fine." Plaintiffs calculated that they would need to contribute $10,000 toward the down payment on the 1230 Horn Avenue property and pay defendants approximately $22,000 based upon defendants' equity in the 1231 Horn Avenue property for the one-half interest in the 1231 Horn Avenue property. They also calculated that they would be obligated to con-

tribute $14,000 toward the first annual payment on the 1230 Horn Avenue property, so that by the end of the following year they would have had to pay in a total of $46,000.

On the next day, June 10, plaintiffs told defendants that it was a deal and defendants answered "fine." On June 13, 1960, the parties opened an escrow for the purchase of 1230 Horn Avenue. Mrs. Patterson, the seller of 1230 Horn Avenue, testified that at the escrow defendants stated to her, "It's a beautiful piece of property. We have the whole front of the hill."

The parties agreed that the time for payment by plaintiffs to defendants (to purchase a one-half interest in 1231 Horn Avenue) would be six months from the date of the close of the 1230 Horn Avenue escrow. Plaintiffs would not have joined with defendants in the purchase of 1230 Horn Avenue without defendants' agreement to include the 1231 Horn Avenue property in the joint venture so that the combined properties would be joined and developed together.

The testimony of Mr. Mayfield, defendants' own attorney, called as a witness by defendants, tends to confirm the existence of an oral joint venture agreement which included both 1230 and 1231 Horn Avenue. Also, the conduct of the parties, as revealed by their correspondence, constitutes substantial evidence that the parties had an existing joint venture agreement.

■ A joint venture requires little formality in its creation, and the agreement is not invalid because it may be indefinite with respect to details. (See *Perry* v. *Lambourne*, 177 Cal.App.2d 662, 663 [2 Cal.Rptr. 441]; *James* v. *Herbert*, 149 Cal.App.2d 741, 748 [309 P.2d 91].)

■■ Defendants next assert: (1) that there is insufficient evidence to support the finding (i.e., Finding of Fact XXI—footnote 2, *supra*) that defendants breached the Horn Avenue agreement of joint venture and (2) that there is insufficient evidence to support the finding (i.e., Finding of Fact VII—footnote 2, *supra*) that defendants breached the Bronson Avenue agreement of joint venture.

The correspondence between the parties constitutes substantial evidence to support the trial court's determinations. The correspondence is in part as follows:

On July 5, 1960, subsequent to the formation of the Horn Avenue joint venture, defendants sent the following letter to plaintiffs which provides in pertinent part:

"Clyde Burt got in touch with me. It seems that now that

the adjoining piece has been acquired a magic enhanced value accrues to the whole piece. Why this did not obtain before I don't know. Of course my interest is not simply to make a profit on land and, though the Horn prospect is certainly a formidable one for us, we should try to do everything in our power to develop it. *Putting my piece* [*i.e.* 1231 Horn Avenue] *& the new piece* [*i.e.* 1230 Horn Avenue] *together under common ownership would be done only for this purpose. Since, however, we don't know whether we can fulfill this purpose, it wld.* [*sic*] *probably be simpler to wait until we are sure one way or the other before actually combining the properties, or simply selling them off...* (Italics added.)

On July 6, 1960, plaintiffs sent the following letter to defendants which provides in pertinent part:

"With regard to the Horn, we quite agree that we should do everything in our power to develop it However, the new basis which you outlined in your letter, under which you now propose to achieve this development, is impossible for a variety of reasons.

"There are a number of ramifications to all this, but, in a word, we would be working on a project, the land for which, we do not even own.

"Before we can proceed any further, perhaps a reclarification of the basis of our original agreement would be in order. That agreement was, after all, arrived at as the only feasible basis for our undertaking a joint project."

On July 7, 1960, defendants sent the following letter to plaintiffs in pertinent part:

"*To turn to the matter of the Horn. I am sorry that you did not understand my reasoning in my last letter. Obviously my only motive in combining the two properties is in order to develop them as one. If however, they cannot be developed I would obviously not consider transferring an interest in my property. I have no intention of backing out on the original basis for making the combination, but I do not want to be implicated in an irrevocable transfer, in the event it becomes necessary to sell rather than to develop.* What I am really concerned about is the question of mechanics. I fail to see how it is impossible for you to proceed with plans for a total development in the light of our original discussions. The only real problem that might occur would be my untimely demise, or, perhaps worse still, my being afflicted by a sudden aberration.

"*I agree that to forestall any misunderstanding an agree-*

*ment, incorporating our original understanding should be drawn up with the provision that a transfer be made contingent upon an actual launching of a project mutually satisfactory to us, attaching a time limit for the consumption of such a project. Of course the simplest alternative wld. [sic] be to establish our respective interests in the combined properties right now, in which both of our interests in terms of the value of our investment would be protected in either eventuality, i.e., whether we build of [sic] not.*

"Please do not retard your efforts in working out a joint project, as I am sure this matter can be worked out mutually when I get to L.A. . . ." (Italics added.)

On July 12, 1960, plaintiffs sent the following letter to defendants in pertinent part:

"With regard to Horn, we feel, as we have felt since you left, that the agreement which we have with you is quite clear Incidentally, when Glenn gave us a write-up of the agreement, he told us that he had sent two copies of the same along to you for your signature.

"Joe, we know what our mutual agreement is; you know what it is.

"Your recent remarks amount to an attempt, on your part, to breach the agreement. As far as we are concerned, the agreement stands."

On July 14, 1960, defendants sent the following letter to plaintiffs in pertinent part:

"Nothing could be better calculated to disrupt our relationship than the slanderous remarks contained in your last letter pertaining to the Horn property. *As a result of their implications I am of two minds, whether to summarily abrogate any proposed joint venture between us, or to still attempt to 'get through to you.'*

"Reasons for the first course are very persuasive: the fact of your taking things for granted; your self-centered and righteous position; your failure to appreciate the fact that I am keenly alive to the disproportionately large and almost gratuitous contribution I have made toward any proposed joint venture by sharing the Bronson and Horn properties and by offering my previous experience as a basis for future undertaking; my suspicion that it may not be in your nature to permit of a continuous harmony in our relationship (a factor which is more important, in view of my state of health and my particular temperament, than any money we may make); your assumption of rights, that are, to say the least, open to

debate and your disposition to take quick umbrage. These all give me pause. Nevertheless, and not without misgivings, I am persuaded to at least make my position clear, and leave it up to you whether or not you seriously and sincerely think we can go on from here.

"First to get the record straight: It was at your solicitation that we undertook to join forces. Anything we had thought of doing together I could just as well have done myself. Whatever proposals I made were for mutual rather than personal benefit, and I do not begrudge my sharing them providing they are the actual occurrence resulting from the improvement of these properties by reason of our mutual effort. I was not simply interested in obtaining land and reselling it. To share the profits from such a course would naturally be a detriment to me, and was at no time my intent. Nevertheless, knowing your limited resources I was even willing to take a chance that this might occur, relying upon a constructive and harmonious joint effort to preclude its necessity, and to materialize in development instead. I assumed (perhaps erroneously) that you were ever mindful of my purpose. *In this connection I wish to make it crystal clear that the disposition of my property at 1231 Horn—which I want to use for our mutual benefit and without violating the intent of any previous understanding providing the use to which it is to be put actually materializes—is mine to make and mine solely. I will certainly not irrevocably commit it to any project which, failing to materialize, could redound to my detriment. If this is not clear to you, or if you take issue with any imagined lack of good faith we need proceed no further and the first course I mentioned in this letter would be automatically implemented.*

"If the above conveys its meaning to you and meets with your approval then the next point I make will be equally blunt. As compensation for my initial contribution I require of you the application of your full energies toward implementing any proposed project, and the use of your resourcefulness without prompting from me. Needless to say Virginia and I intend to provide constructive aid in achieving our purpose.

"If, after digesting what I have written, you deeply and objectively feel that we can work together from now on without anything like this ever occurring again, please set this forth in a letter to me. Do not call to discuss it on the phone. I shall be glad, upon my next visit to Los Angeles to discuss

two alternative formulas for incorporating 1231 Horn Avenue and 1230 Horn, one, an irrevocable agreement which can be executed now, another an agreement which would be irrevocable only if and when the properties are developed. Both formulas would be predicated upon the prior development of the Bronston [*sic*] property.

" . . . . . . . . . . . . . . . .

"*Naturally the Chilcotte matter will have to wait pending the issues raised in this letter*" (Italics added.)

On July 19, 1960, plaintiffs sent the following letter to defendants in pertinent part:

". . . We have read your last letter carefully.

"It is clearly apparent that you have now breached the Bronson agreement.

"In so doing, you have raised certain very serious questions as to your total conduct, with regard to us, for the past sixteen months."

▮ As stated in *Gold Min. & Water Co.* v. *Swinerton,* 23 Cal.2d 19, 29 [142 P.2d 22], "[7] A contract is totally breached and an anticipatory repudiation occurs when the promisor without justification and before he has committed a breach, makes a positive statement to the promisee indicating that he will not or cannot substantially perform his contractual duties." ▮ Under the Horn Avenue agreement of joint venture, plaintiffs were under no duty to consent, on July 14, 1960, either to defendants' sole determination of the disposition of 1231 Horn Avenue or to the addition to their agreement of any new conditions. Yet defendants, in their letter of July 14, 1960, indicate that unless plaintiffs accept defendants' ultimatum, defendants will "summarily abrogate any proposed joint venture between us."

▮ Defendants' next contention is that the trial court erred in determining that plaintiffs were entitled to a one-half interest in the 1231 Horn Avenue property.

The trial court found (Finding of Fact XV—footnote 2, *supra*) that defendants agreed to convey to plaintiffs an undivided one-half interest in the 1231 Horn Avenue property for a total consideration of $38,000 provided plaintiffs paid, in cash, to defendants, within six months from the date of the agreement of joint venture the sum of $38,000 less one-half the then remaining balance due on a note secured by a deed of trust on the 1231 Horn Avenue property.

The judgment provides in pertinent part as follows:

"It Is Further Ordered, Adjudged And Decreed that a joint venture exists between the parties involving those two certain parcels of improved real property commonly known as 1230 Horn Avenue and 1231 Horn Avenue, both in the City and County of Los Angeles, State of California; that the certain parcel known as 1230 Horn Avenue is held by the parties for the benefit of their said joint venture as tenants in common; that the certain parcel known as 1231 Horn Avenue is held by the defendants for the benefit of the said joint venture; *that each of the parties has an equal interest in the said combined properties and each of the parties is to share in the profits and losses equally of their said joint venture; that the said joint venture shall be and hereby is dissolved and forthwith shall be wound up*; . . ." (Italics added.)

The judgment then further provided in pertinent part that:

"It Is Further Ordered, Adjudged And Decreed that, at the time of sale of the aforementioned real properties by R. E. Allen, Receiver, *the account of defendants shall be further credited in the amount of $23,260.82 which amount represents the sum due for purchase of a one-half interest in the parcel of real property commonly known as 1231 Horn Avenue by plaintiffs from defendants.* The said sum of $23,-260.82 is equal to one-half of the difference between $76,000.00 (the agreed upon purchase price) and the $29,478.37, outstanding as an encumbrance against the said parcel of real property as of January 1, 1961." (Italics added.)

Defendants' assertion that the trial court "gave plaintiffs a full one-half interest in the 1231 Horn property for free, for nothing" is specious. As indicated by the portion of the judgment set forth above, defendants received a credit for the amount which represented a one-half interest in 1231 Horn Avenue.

Defendants further assert that plaintiffs are entitled only to a ten sixty-fourths interest in the Horn Avenue joint venture.

A written memorialization of the Horn Avenue joint venture agreement (said written memorialization was never executed) sets forth that plaintiffs are to have a one-half interest in the 1231 Horn Avenue property if they pay $38,000 in cash less one-half of the then remaining balance on a note or as an alternative, in the event plaintiffs do not pay $38,000 as above set forth, then plaintiffs are to own a fractional interest

(i.e., ten sixty-fourths) in the entire Horn Avenue joint venture.[3]

The gist of defendants' contention is that since plaintiffs did not pay $38,000, then they are only entitled to the 10-64ths fractional interest. This argument presupposes a necessity of tender by plaintiffs. Defendants ignore Finding of Fact XVIII (footnote 2, *supra*) wherein the court found that at the time of defendants' refusal to proceed with the Horn Avenue joint venture, plaintiffs had duly performed all terms and conditions by them to be performed and that further performance by plaintiffs was prevented by defendants. ▮ As indicated in *Beverage* v. *Canton Placer Mining Co.*, 43 Cal.2d 769, 777 [278 P.2d 694]: ". . . [14] The law does not require the performance of an idle act, and a formal tender of performance is excused by the refusal in advance of the party to accept the performance owing."

▮ Lastly, defendants contend that the trial court's determination (Finding of Fact X—footnote 2, *supra*) that plaintiffs were damaged in the sum of $15,000 from the breach of the Bronson Avenue joint venture is unsupported by substantial evidence.

The trial judge filed a memorandum of ruling on November 21, 1961, which provides in pertinent part as follows:

"With regard to the item of damages for the breach of the Bronson joint venture, the primary measure is the amount of the innocent party's loss, which may consist of his reasonable outlay or expenditure toward performance, and the anticipated profits which he would have derived from performance. (*James* v. *Herbert, supra*; *Buxbom* v. *Smith*, 23 Cal.2d 535 [145 P.2d 305].) Moreover, where because of uncertainty or difficulty of proof or other reason, the innocent party is unable to establish a claim for lost profits, the damages may be the amount of his expenditures, together

---

[3]Defendants set forth in their brief how they arrive at the ten sixty-fourths fractional interest in the Horn Avenue joint venture as follows:

". . . [T]he market value of 1231 Horn was $76,000 and since there was an encumbrance of $32,000 against it, the equity of the [defendants] on 1231 Horn was $44,000. Plaintiffs paid $10,000 into the 1230 Horn escrow and defendants paid a like amount of $10,000 into the 1230 Horn escrow, making a total of $20,000 . . . [T]he $20,000 is to be added to the $44,000 equity of the . . . [defendants], making a total equity of $64,000.

"Under the oral formula, if plaintiffs paid no money for an interest in 1231 Horn, plaintiffs would receive only a 10/64th fractional interest in 1231 Horn and then have their existing 50% interest in 1230 Horn reduced to a 10/64ths fractional interest."

with the reasonable value of his own services in preparation and performance of the contract. (*Perry* v. *Lambourne*, 177 Cal.App.2d 662 [2 Cal.Rptr. 441]; *Cederberg* v. *Robison*, 100 Cal. 93 [34 P. 625]; *Patty* v. *Berryman*, 95 Cal.App.2d 159 [212 P.2d 937]; *Walpole* v. *Prefab Mfg. Co.*, 103 Cal.App.2d 472 [230 P.2d 36]; Rest., Contracts, § 333; 17 A.L.R.2d 1300; 14 Cal.Jur.2d, Damages, § 132, p. 758.)

"The evidence discloses that plaintiffs rendered valuable services to the Bronson joint venture for an extended period of time by way of preparation and performance of the contract. In addition, plaintiffs were denied the opportunity to earn the $5,000.00 in preparing the plans and specifications as provided in the joint venture agreement. Plaintiffs' damage might also consist of a loss of profits on this venture, since there is evidence in the case produced by defendants from which it could be concluded that there was a reasonable probability that profits would have been earned except for the breach of the agreement. It is the judgment of the Court that plaintiffs are entitled to an award of damages against defendants in the sum of $15,000.00."

There is ample evidentiary support for the trial court's determination. The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied October 3, 1963, and appellants' petition for a hearing by the Supreme Court was denied October 23, 1963.