[Civ. No. 25848. First Dist., Div. Three. June 17, 1970.]

MENDOYOMA, INC., Plaintiff and Appellant, v.
COUNTY OF MENDOCINO, Defendant and Respondent.

**COUNSEL**

Spurr, Brunner & Nelson and W. H. Brunner for Plaintiff and Appellant.

Duncan M. James, District Attorney, and Michael R. Dougherty, Deputy District Attorney, for Defendant and Respondent.

**OPINION**

**CALDECOTT, J.**—Appellants, Mendoyoma, Inc., a corporation, and M. E. Dibble, filed a complaint for money and an injunction against respondent, County of Mendocino, alleging that the county breached a concession agreement entered into between Mendoyoma and the county. Following

a trial without a jury judgment was entered awarding Mendoyoma damages of $82,844.57, less $6,237.43 for taxes due from Mendoyoma to the county on the latter's counterclaim. Dibble was denied any recovery from the county.

Mendoyoma, Inc. appeals from the judgment. The county did not appeal, and Dibble's appeal has heretofore been dismissed by stipulation.

The essential facts are not in dispute. The County of Mendocino (hereafter County) entered into a license agreement with the United States of America, through the Secretary of the Army, whereby County became the licensee of the right to use and occupy for public park and recreation purposes from July 1, 1959 until June 30, 1984, certain lands belonging to the United States under the jurisdiction of the Department of the Army, situated in Mendocino County, and known as the Russian River Reservoir Area.

Subsequently, County entered into a written concession agreement with appellant Mendoyoma. The agreement made appellant a licensee from County and gave appellant the right to construct, either itself or through approved subconcessionaires, buildings and improvements for the service of the public and to operate them for profit for the term ending June 30, 1984. This agreement was approved by the Army. Appellant then entered into sublicense agreements with M. E. Dibble and Myrl Bench, granting them the right to develop specific portions of the complex and to operate them for profit.

Thereafter, County committed breaches of said concession agreement with appellant, each of which was found by the trial court to be substantial, material, and total, justifying Mendoyoma in treating the concession agreement as being at an end for all purposes of performance by it as of the end of 1962. Further performance after that time was justified in the attempt of appellant to mitigate its damages. The exact nature of the breaches is immaterial to this appeal.

The revenue which might reasonably have been expected by appellant from full performance by the County was substantial. The measure of damages adopted by the court was appellant's reasonable outlay for expenditures toward performance made in faith on the contract. In calculating appellant's damages the court excluded $14,237.33 interest paid on loans, on the basis that it was not reasonably necessary for performance. The court also found that in endeavoring to perform, appellant transferred to subconcessionaires valuable subconcession rights in return for their performing some of appellant's obligations under the terms of the agreement between appellant and the county. No finding was made on the value of

such transferred rights. The court concluded that no evidence was offered to support such a finding because the only evidence admitted was evidence of the cost of the capital investments made by the subconcessionaires and the operating profit retained by them. These cost and profit items were found not to be a proper part of appellant's damage as they were incurred by and accrued to persons other than appellant. The court refused appellant's claim for compensation for the 1,250 hours devoted by the president and secretary of appellant on appellant's behalf in endeavoring to carry out the agreement. Compensation was disallowed on the basis that they were acting for appellant in their performance of their duties as officers and appellant is not entitled to be compensated for their time, except as compensation was allowed to the secretary as general counsel for his services as an attorney. On appeal, appellant contends that it should have been allowed to recover for the above items.

### Should the appeal be dismissed for failure to move for a new trial?

Respondent maintains that the appeal should be dismissed as the appellant is claiming inadequate damages and failed to move for a new trial. Respondent states that a motion for a new trial is a prerequisite to a claim of either excessive or inadequate damages, citing *Alexander* v. *McDonald,* 86 Cal.App.2d 670 [195 P.2d 24]; *Schmidt* v. *Macco Construction Co.,* 119 Cal.App.2d 717 [260 P.2d 230], and *Diemer* v. *Eric F. Anderson, Inc.,* 242 Cal.App.2d 503 [51 Cal.Rptr. 657].

Appellant contends that the cases holding that a motion for a new trial is a prerequisite to a claim for inadequate damages are not controlling in this case. Appellant maintains its appeal is based on the refusal of the trial court to admit evidence concerning the value of certain items of detriment that appellant had suffered by reason of the County's breach of contract.

In *Schmidt* v. *Macco Construction Co., supra* at page 721, the court stated: "It is the theory of plaintiff that in awarding him but $17,500 the jury must have disregarded the terms of the written contract and must have based its verdict on the parol evidence claimed to have been erroneously admitted. Defendants urge that this is but an indirect manner of contending that damages are inadequate, and point out that plaintiff cannot urge inadequacy of damages because of his failure to urge said ground in a motion for a new trial. ▆ It is the law that such a motion is a condition precedent to urging inadequacy of damages on appeal. (*Alexander* v. *McDonald,* 86 Cal.App.2d 670 [195 P.2d 24].) But the rule that prevents plaintiff from now urging inadequacy of damages does not prevent him from urging errors in the admission of evidence and errors in the instruc-

tions, even though such errors, if they be errors, also resulted in an improper reduction of the damages. A motion for a new trial is not, generally, a condition precedent to an appeal. Generally speaking, any error of law can be raised on an appeal even though a motion for a new trial has not been made."

In the present case the appellant contends that the damages were inadequate because certain items were erroneously excluded from the measure of damages. This case is analogous to the *Schmidt* case and for the reasons stated therein, appellant is not precluded from urging points relating to the claimed erroneous rulings on the admission of evidence. The appeal, therefore, should not be dismissed.

### *Is appellant entitled to additional damages for interest paid on loans?*

Among the items the court excluded from the recovery was $14,237.33 expended for interest on loans. The court found that the expenditure was not reasonably necessary for performance of the contract. Appellant claims the interest should have been allowed as a necessary expense and asserts that there is no evidence to support the court's finding that the payment of this interest was not reasonably necessary.

The evidence shows that the initial capital investment in the corporation was only $6,000. The proposal submitted by appellant called for a variety of separate construction projects with a total estimated expenditure of $644,000. It was initially planned that stock in the corporation would be sold to the public, but the project never developed sufficiently to show a favorable statement sufficient to convince the Corporation Commissioner to issue a permit to sell shares. There was also evidence that appellant's financing was jeopardized by the Army's refusal to permit a bar to be included in the planned restaurant. This evidence certainly indicates that it was reasonably necessary for appellant to borrow funds in order to perform under the contract.

There is no substantial evidence to support the court's finding. The appellant's letter of transmittal included in the proposal stated: "Our company is in a position to present satisfactory proof that it is financially responsible and will be able to meet the development of all facilities in accordance with the proposal. The company also intends to issue shares of its common stock to residents of Mendocino County, thereby assuring local persons an opportunity to participate in the project." However, there was testimony that there was no indication of the potential sources of revenue, or how much these might amount to. There was also evidence that the promoters expected approximately $200,000 in risk capital on an immediate basis,

and that they felt there was enough interest on the part of the community so that funds would be available during the development of the project.

Respondent contends that the burden is upon the plaintiff to establish that the payment of interest was reasonable and necessary. This is incorrect. ■ The primary measure of damages for breach of contract is the amount expended on the faith of the contract. (See *Buxbom* v. *Smith,* 23 Cal.2d 535 [145 P.2d 305]; *Cederberg* v. *Robison,* 100 Cal. 93 [34 P. 625]; *Gross* v. *Raeburn,* 219 Cal.App.2d 792, 807-808 [33 Cal.Rptr. 432]; *Navarro* v. *Jeffries,* 181 Cal.App.2d 454, at p. 461 [5 Cal.Rptr. 435].) ■ Once the plaintiff has established the amount which he has been induced to expend, the defendant must show that the expenses of the party injured have been extravagant and unnecessary for the purpose of carrying out the contract. The court's finding that appellant could have expected substantial revenue if the contract had been carried out would indicate that appellant was justified in funding its initial development by borrowing money. Respondent has cited no portion of the record which would show that any means other than the loans were available to appellant for financing the development.

■ The evidence relied upon is not sufficient to support the trial court's finding that the expenditure for interest was not reasonably necessary for performance.

However, the point is raised that, assuming the expenditure was reasonably necessary, was appellant's borrowing money within the contemplation of the parties at the time of contracting? Respondent contends that the expenditure in question is in the nature of special damages, not within the contemplation of the parties at the time the contract was entered into and thus, under the rule of *Hadley* v. *Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145, not recoverable. Appellant claims that the interest constitutes general damages, and therefore must be considered within the contemplation of the parties at the time the contract was entered into. 1 Witkin, Summary of California Law (p. 306) states: "In *Hadley* v. *Baxendale* (1854) 9 Ex. 341, 156 Eng. Rep. R. 145, the court announced the doctrine still generally accepted as a limitation on damages recoverable for breach of contract: First, *general* damages are ordinarily confined to those which would *naturally arise* from the breach, or which might have been *reasonably contemplated or foreseen* by both parties, at the time they made the contract, as the *probable result* of the breach. Second, if *special circumstances* cause some *unusual* injury, *special* damages are not recoverable therefor unless the circumstances were *known* or *should have been known* to the guilty party at the time he entered into the contract. The requirement of *knowledge or notice* as a prerequisite to the recovery of

special damages is based on the theory that a party does not and cannot assume limitless responsibility for all consequences of a breach, and that at the time of contracting he must be advised of the facts concerning special harm which might result therefrom, in order that he may determine whether or not to accept the risk of contracting. This doctrine is followed in the Contracts Restatement (§ 330). And in California, C.C. 3300. . . ."

In the present case the record is devoid of any evidence that performance of the contract was to be financed through loans. In fact, the evidence is uncontradicted that the appellant intended to finance the contract through the issuance of stock. The secretary-attorney of the appellant testified that the company (appellant) was financially responsible and intended to issue shares of its common stock to the public. Certainly it cannot be said that appellant's resorting to borrowing, and the subsequent obligation to pay interest, was foreseeable by either party at the time of contracting, or that the respondent had notice, or should have had notice, that the appellant would become liable for the payment of interest.

Thus the trial court was correct in not allowing the $14,237.33 for interest in the damages awarded to appellant.

### The reasonable value of concession rights.

The appellant maintains that the trial court erred in refusing to accept as evidence of the value of concession rights let to subconcessionaires, the cost of capital investments made by subconcessionaires, plus the franchise fee paid by them to appellant. The appellant points out that it is not claiming that it should be reimbursed for the amount of the capital investments paid by the subconcessionaires or the amount paid by subconcessionaires for the franchise, but that these amounts are competent evidence to establish the value of the concession rights which appellant has lost as a result of respondent's breach. However, as the trial judge stated, he could not see any relationship between what appellant was to realize on the contract and what the subconcessionaires had expended. Appellant is unable to cite any authority to support its contention other than cases in which the price received for the property was considered relevant to establish the value of the property. This, however, is not the point at issue.

The fact that the subconcessionaires decided to spend a certain amount of money to develop the franchise granted to them in the subconcession agreements is not evidence tending to establish the value of the right transferred. In other words, there is no relationship between dollars spent by others and the value of the rights transferred by appellant. It is well settled that the party claiming the damage must prove that

he has suffered damage and prove the elements thereof with reasonable certainty. (*Walnut Creek Pipe Distributors, Inc.* v. *Gates Rubber Co.,* 228 Cal.App.2d 810, 819 [39 Cal.Rptr. 767], Civ. Code, § 3301.) The measure of damages claimed by appellant is purely hypothetical and speculative.

Therefore, the lower court was correct in concluding that there was insufficient evidence upon which to base a determination of the value of the rights transferred by appellant to the subconcessionaires.

*The value of Mendoyoma's services in<br>endeavoring to perform the contract.*

The court stated that the awarding of damages to compensate appellant for loss of profits was too conjectural to be a basis for damages and therefore the proper measure in lieu of profits would be the value of appellant's services in attempting to perform. The court refused to allow appellant any compensation for the time devoted by the president and secretary of appellant in endeavoring to carry out the agreement. The court concluded that they were acting for appellant in their performance of their duties as officers and that appellant was not entitled to be compensated for their time, "except as compensation is allowed to the Secretary as General Counsel for his services as an attorney."

There is no question but that the court was correct in ruling that the proper measure of damages in lieu of profits would be the value of appellant's services in attempting to perform. (*Gross* v. *Raeburn, supra,* 219 Cal.App.2d 792, 807-808.) Appellant's contention that it should be compensated for the time its officers spent in endeavoring to perform is meritorious. As appellant indicates, the evidence of time spent by appellant's officers that was presented to support the claim for the value of appellant's services was not directed to any compensation due the officers for their services, but rather to the compensation due the corporation acting through its officers.

The trial court found that some 1,250 hours were devoted by the president and secretary of Mendoyoma in carrying out the contract. The secretary stated that he spent 750 hours on behalf of the corporation. He testified that "[T]he service was performed as executive—one of the executive officers to Mendoyoma." He further testified ". . . and, to break it down between my services as a lawyer and my services as an executive officer of the corporation would be an impossibility. . . ." The court allowed $8,043.75 as attorney's fees incurred by the appellant. However, the record does not show whether this was intended to compensate for the whole 750 hours expended by the secretary or only a portion thereof, or related to some other legal services rendered. The appellant is entitled to be com-

pensated for the value of its services in attempting to perform the contract, and the measure of that value being the time its officers expended on its behalf. However, we cannot determine from the record what credit, if any, to allow against the 1,250 hours found to have been devoted to the performance of the contract.

The judgment as to Mendoyoma, Inc. is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Draper, P. J., and Brown (H. C.), J., concurred.